IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 08-223 |
| | : | |
| JERRICK BART LIMEHOUSE | : | CIVIL ACTION |
| | : | |
| Defendant. | : | NO. 13-1254 |
| | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                                            **July 23, 2013**

      This case is now before the Court on Defendant/Petitioner's Habeas Corpus Motion Under 28 U.S.C. § 2255 (Doc. No. 75) and the Government's Response thereto (Doc. No. 79). For the reasons set forth below, the Petitioner's Motion will be denied.

### I. BACKGROUND

      On April 22, 2008, a grand jury returned a criminal indictment against Jerrick Limehouse ("Limehouse" or "the Petitioner"). The indictment charged him with three counts. Count One was for conspiracy in violation of 18 U.S.C. § 371; Counts Two and Three were for possession of a firearm or ammunition by a convicted felon in violation of 18 U.S.C. § 922(g). On June 17, 2008, attorney Jeffrey Azzarano was appointed to represent Limehouse.

      Mr. Azzarano negotiated a plea agreement with the Government (Doc. No. 27), and on December 10, 2008, Limehouse pled guilty to Count Two (Doc. No. 29). In concession for dropping Counts One

1

and Three of the indictment, Limehouse pled guilty to Count Two and agreed not to contest that he had three prior convictions that constituted predicate offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Transcript at 6-14, Doc. No. 55). Limehouse stated that he wished to plead guilty and that he was happy with his attorney, and this Court accepted his guilty plea as knowing, voluntary, and intelligent. (Id. at 20-21, 34).

Soon after he pled guilty, Limehouse wrote to the Court that he wished to withdraw his guilty plea. On January 7, 2009, the Court held a hearing, where Limehouse claimed that he was dissatisfied with the terms of the guilty plea and Mr. Azzarano's representation. This Court granted his motion to withdraw his guilty plea. (Doc. No. 35). Limehouse also requested new counsel, and the Court appointed attorney Stephen Britt to represent Limehouse going forward, replacing Mr. Azzarano.

Trial was scheduled for August 18, 2009. Instead, Limehouse pled guilty on that date to Counts One, Two and Three of the indictment without a negotiated plea agreement. (Doc. Nos. 51, 54). Limehouse reserved his right to challenge the applicability of the ACCA. Limehouse confirmed that he wished to plead guilty pursuant to an open plea, without a plea agreement, and that he was satisfied with the legal representation provided by Mr. Britt. (Transcript at 8, Doc. No. 56). The Court accepted his

2

guilty plea as knowing, voluntary, and intelligent. (Id. at 26).

Sentencing was scheduled for November 19, 2009. The Government's Presentence Investigation Report indicated that Limehouse had three convictions that qualified as predicate offenses under the ACCA: 1) a 1990 Pennsylvania state conviction for possession of narcotics with intent to deliver ("PWID"); 2) a 1991 Pennsylvania state conviction for PWID; and 3) a 1998 Pennsylvania state burglary conviction. (Doc. No. 61). Mr. Britt filed a sentencing memorandum on behalf of Limehouse where he conceded that the 1998 burglary conviction was a predicate offense, but challenged the two PWID convictions. (Doc. No. 57). At the sentencing hearing, Mr. Britt argued that it was not clear that the 1991 PWID conviction constituted a "serious drug offense" under the ACCA; however, the Court overruled his objections. Mr. Britt withdrew his objections to the 1990 PWID conviction. (Transcript at 9, Doc. No. 71). The Court imposed a sentence of 60 months on Count One, and 216 months on Counts Two and Three, which were merged for the purposes of sentencing; the sentences on Count One and on Counts Two and Three were to run concurrently for a total sentence of 216 months. (Doc. No. 67). The Court also imposed a term of supervised release, a fine, and a special assessment. (Id.).

Mr. Britt filed a timely appeal on behalf of Limehouse, alleging various errors at sentencing, including the

determination that the 1991 PWID conviction was a serious drug offense. On July 29, 2010, the Third Circuit affirmed this Court's judgment. (Doc. No. 72). Limehouse's conviction became final on October 27, 2010.

On March 8, 2013, Limehouse filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 75). In the Motion, Limehouse argues that he received ineffective assistance of counsel at the plea bargaining stage and at the sentencing stage. The Government responded to his Motion on April 12, 2013. (Doc. No. 79).

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code provides an avenue for individuals in federal custody to challenge their sentences. To succeed in such a challenge, a petitioner must demonstrate that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

The Petitioner's constitutional claims stem from alleged Sixth Amendment violations. The Supreme Court of the United States has long recognized that the right to counsel under the Sixth Amendment and the Due Process Clauses is crucial to protecting the fundamental constitutional guarantee of a fair

trial.  See Strickland v. Washington, 466 U.S. 668, 684-85
(1984).  In order to establish that counsel's assistance was
ineffective, a petitioner must meet both elements of the two-
pronged test established in Strickland.  First, a petitioner must
show that counsel's performance was deficient.  Id. at 687.  He
must establish that counsel not only erred, but that counsel's
errors were considerable enough to undermine the proceedings to
such an extent that the outcome cannot be considered fair and
reliable.  Id.  Second, a petitioner must also establish that
counsel's actions prejudiced the defendant.  Id. at 687.  "Not
every 'error by counsel, even if professionally unreasonable
. . . warrant[s] setting aside the judgment of a criminal
proceeding.'"  Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010)
(quoting Strickland, 466 U.S. at 691).  "The defendant must show
that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  Strickland, 466 U.S. at 694.

As to the Petitioner's claimed sentencing errors, "a
defendant who fails to object to errors at sentencing and
subsequently attempts to raise them on direct appeal must
demonstrate cause and prejudice for that failure. . . . [The]
cause and prejudice standard applies to § 2255 proceedings in
which a petitioner seeks relief from alleged errors in connection
with his sentence that he has not directly appealed."  United

5

States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) (superseded by rule in non-relevant part) (internal quotations omitted); see also United States v. Mannino, 212 F.3d 835, 839 (3d Cir. 2000). "In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim." Essig, 10 F.3d at 979 (internal quotations omitted). "[I]neffective assistance of counsel . . . is cause." Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

### III. DISCUSSION

The Petitioner asserts his entitlement to habeas relief based on constitutionally ineffective assistance of counsel at the guilty plea stage and at the sentencing stage, where counsel did not challenge two of the convictions that made him eligible for a sentencing enhancement. The Court will address these claims; but first, the Court must address the timeliness of the Petitioner's Motion.

**A. Timeliness of the Petitioner's Motion**

Motions under Section 2255 are subject to a one-year period of limitations. See 28 U.S.C. § 2255(f). This limitation period generally runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). However, the limitation period can run from later dates, including: if illegal government action impeded the Petitioner from filing his petition; the

6

Supreme Court newly recognized a retroactive right now asserted; or the Petitioner's claims were supported by new facts that could not have been previously discovered. 28 U.S.C. § 2255(f)(2)-(4).

In his Motion, the Petitioner concedes that his Motion was filed more than a year after his judgment of conviction became final. (Mot., at 12, Doc. No. 75). However, the Petitioner argues that until March 9, 2012, he was serving time in state custody at SCI Western Pittsburgh where he had no access to the federal statutes or case law pertinent to filing the present federal Motion. Therefore, he claims that he would have until March 9, 2013 to file his Motion.

As the Government points out, the Petitioner appears to be invoking the doctrine of equitable tolling. (Government's Resp. to Pet.'s Mot., at 10, Doc. No. 79). The federal habeas statutes under the Antiterrorism and Effective Death Penalty Act ("AEDPA") are subject to equitable tolling. Holland v. Florida, 130 S. Ct. 2549, 2562 (2010). A petitioner can establish equitable tolling by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Ross v. Varano, 712 F.3d 784, 798 (3d Cir. 2013) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence." Ross, 712 F.3d at 799 (quoting Holland, 130 S. Ct. at 256).

It is not readily apparent to this Court that the Petitioner has borne the burden of showing reasonable diligence in pursuing his rights and extraordinary circumstances that stood in his way. However, in order to thoroughly and finally dispose of the Petitioner's Motion, we will assume without deciding that equitable tolling applies in this case and address the merits of his claims.

**B. Ineffective Assistance of Counsel During Plea Bargaining**

As his first ground for relief, the Petitioner states that he had ineffective assistance of counsel in the plea bargaining stage. He states that "trial counsel pursuaded [sic] him into declining a plea offer that would have had him plea[d] to a one count indictment, yet later pursuaded [sic] petitioner to enter a plea of the open plea veriaty [sic] where he pled to a three count indictment." (Mot., at 5, Doc. No. 75). These actions, he argues, caused him to be subject to 276 more months of imprisonment than if he had pled guilty under the agreement. (Id.).

The Petitioner's claim is plainly without merit. He was represented by two different counsel at the two different pleas. Mr. Azzarano represented him at the time of the first negotiated plea offer and Mr. Britt represented him at the time of the second open plea. And contrary to the Petitioner's assertions, Mr. Azzarano did not counsel the Petitioner to decline the

8

government's plea offer; instead, the Petitioner accepted the plea offer under Mr. Azzarano's counsel. He later changed his mind and withdrew it. (Doc. No. 35). The Court has the letter in which the Petitioner writes the Court, by his own hand, that he wishes to withdraw his plea under the plea agreement. (Letter of Dec. 10, 2008, on file with Judge J. Curtis Joyner). The Petitioner's claim that counsel was ineffective in counseling him to decline this plea offer is plainly unmeritorious. Mr. Azzarano cannot have erred, because he advised the Petitioner to accept the plea. Mr. Britt cannot have erred, because he was not appointed until after the Petitioner withdrew his plea. Therefore, the Petitioner's first ground for relief under Section 2255 fails.[1]

### C. Ineffective Assistance of Counsel at Sentencing

As his second ground for relief, the Petitioner argues that he was denied effective assistance of counsel at the sentencing stage. Specifically, he argues that counsel was ineffective for failing to argue that the Petitioner's 1998 burglary conviction

---

[1] Furthermore, even if the Court were to posit some error by either counsel that constituted deficient performance under Strickland, the Petitioner has not established that such an error caused prejudice, as Strickland requires. 466 U.S. at 687. The Petitioner seems to claim that because he pled guilty to all three counts, he was subject to 60 months on Count One, 216 months on each of Counts Two and Three, for a total of 492 months, while under the plea agreement, he would have been subject to only 216 months. (Mot., at 5, Doc. No. 75). Even if this were true, which it does not appear to be as the Petitioner was subject to life in prison on Count Two as he was told at his first plea hearing (Transcript at 15, Doc. No. 55), there is no prejudice, because in actuality, the Petitioner was sentenced to only 216 months. (Doc. No. 64). Therefore, the Petitioner has not shown that there is a "reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

and his 1990 PWID conviction should not be used to enhance his sentence under the ACCA. The Court will address the argument by considering each conviction separately.

1. 1998 Burglary Conviction

In his motion, the Petitioner argues that "[t]he 1998 burglary conviction should not have been used because petitioner was without counsel at the guilty plea proceeding in the Philadelphia common pleas court in that matter." (Mot., at 7, Doc. No. 75). In response, the Government asserts that this representation is incorrect, as the Petitioner's conviction for burglary in 1998 was after a bench trial, not a guilty plea, where he was represented by counsel. In support of this position, the Government attaches as Exhibit A to its Response the transcript from that 1998 burglary trial, which was a public record that the Government asserts it provided to the Petitioner's counsel before the sentencing hearing. (Government's Resp. to Pet.'s Mot., at 8, Doc. No. 79).

The Court has reviewed the transcript from the 1998 proceeding, and finds that the Petitioner did not plead guilty and was represented by counsel. Attorney Larry Charles appeared for the Defendant, Jerrick Limehouse, and actively participated in the trial proceeding, cross-examining the Government's witnesses, questioning the Petitioner on direct examination, and arguing to the judge to try to negate an element of the offense.

10

(Ex. A to Government's Resp., at 1, 14-16, 21-22, 23-27 31-32, Doc. No. 79). The Petitioner had waived his right to a jury trial and the judge found that he was guilty of burglary after a bench trial. (Ex. A to Government's Resp., at 36, Doc. No. 79).

To be subject to the ACCA sentence enhancement, a petitioner must have three previous convictions for violent felonies, serious drug offenses, or both. 18 U.S.C. § 924(e). The ACCA defines "violent felony" as a crime punishable by imprisonment for a term exceeding one year that is, among other things, burglary. See 18 U.S.C. § 924(e)(2)(B)(ii). "Pennsylvania's broad definition of 'occupied structure' makes Pennsylvania's burglary statute broader than Congress's generic view of burglary," as intended for predicate offenses under the ACCA. United States v. Bennett, 100 F.3d 1105, 1109 (3d Cir. 1996). Therefore, a sentence can only be enhanced under Section 924(e) "if all of the elements of generic burglary were necessarily found." Id. at 1110.

The Supreme Court has cautioned against a sentencing court's concluding that a defendant committed a predicate offense from a review of the record, despite a judge or jury never having reached that conclusion. Taylor v. United States, 495 U.S. 575, 601 (1990). Therefore, a sentencing court may only look at the fact of conviction and the statutory definition of the prior offense, except in a narrow range of cases where sentencing

courts can "go beyond the mere fact of conviction." Id. at 602. One such case would be a conviction for burglary in a state that goes beyond the generic definition of burglary. Id. In such a state, the conviction could be used for enhancement if "the indictment or information and jury instructions [were to] show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict." Id. In Shepard v. United States, the Court further explained that for cases tried without a jury, the closest analog to jury instructions would be a judge's formal rulings of law and findings of fact in a bench trial. 544 U.S. 13, 20 (2005).

   To determine whether the Petitioner's 1998 burglary conviction constituted a predicate offense for the sentencing enhancement under the ACCA, we need look no further than the transcript of the bench trial. In that trial, the judge found the Petitioner here guilty of first-degree burglary under Pennsylvania law. The transcript of the trial and the proceedings makes it clear that the burglary at issue was of a building, such that the judge's finding of guilt can only have been for a generic burglary  (Ex. A to Government's Resp., at 7-9, 26, 28, 36, Doc. No. 79).  This transcript was a public record and the Government states that it was provided to Petitioner's counsel before the sentencing hearing.  (Government's Resp. to

12

Pet.'s Mot., at 8, Doc. No. 79). As such, counsel's performance in failing to challenge that the 1998 burglary conviction was a predicate offense under the ACCA was not deficient, because such a challenge would have failed.

2. 1990 PWID Conviction

The Petitioner argues that "[c]ounsel was ineffective for not challenging the 1990 drug conviction . . . because Petitioner admitted no guilt in the 1990 drug conviction." (Mot., at 7, Doc. No. 75). He states that because the case was adjudicated by an Alford plea, it cannot be a predicate offense for the ACCA. (Id.). The Government responds by arguing that the Petitioner actually pleaded guilty in that case, and even if the characterizations of his claims were true, they would not entitle him to relief. (Government's Resp. to Pet.'s Mot., at 8, Doc. No. 79).

The Court has reviewed the documents that memorialize the Petitioner's PWID conviction in 1990. (Ex. A to Government's Amended Sentencing Memorandum, at 21-25, Doc. No. 61). We can find no indication that the Petitioner pled guilty by an Alford plea, admitting no guilt. See North Carolina v. Alford, 400 U.S. 25, 37 (1970) (holding that a defendant may plead guilty to a crime even if he is unwilling or unable to admit his participation in the crime or maintains his innocence, as long as he voluntarily and knowingly decides to plead guilty). The form

by which the Petitioner pled guilty to PWID merely indicates that he is pleading guilty, and is signed by the Petitioner. (Ex. A to Government's Amended Sentencing Memorandum, at 22, Doc. No. 61). There is no indication on that plea document that the Petitioner maintained his innocence. (Id.).

These documents were attached to the Government's Sentencing Memorandum and available to Petitioner's counsel prior to sentencing. (Doc. No. 61). As these documents contain no indication that the 1990 PWID conviction was obtained via Alford plea, Petitioner's counsel at sentencing cannot have performed deficiently by failing to challenge the conviction for this reason. However, out of an abundance of caution and to verify that there was no prejudice in forgoing such a challenge, the Court will examine the Petitioner's 1990 PWID conviction to determine whether it was correctly determined to be a predicate offense under the ACCA.

As discussed above, a petitioner must have three previous convictions for violent felonies, serious drug offenses, or both to be subject to a sentence enhancement under the ACCA. 18 U.S.C. § 924(e). "Serious drug offense," with respect to a state law conviction, is defined as "an offense under State law involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for

which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

To establish the conviction, the Court may rely upon court documents - such as the charging documents, the terms of the plea agreement where the factual basis for the plea is established, or comparable judicial record. Shepard, 544 U.S. at 26. Charging documents upon which a court can properly rely include the bill of information and the criminal complaint. United States v. Coker, 223 F. App'x 136, 142 (3d Cir. 2007).

The Petitioner was convicted in 1990 of possession with intent to deliver a controlled substance under 35 Pa. Cons. Stat. § 780-113(a)(30). (Ex. A to Government's Amended Sentencing Memorandum, at 22, Doc. No. 61). Not all violations of this subsection constitute a "serious drug offense" under the ACCA, because not all violations are punishable by a maximum term of ten years or more. 35 Pa. Cons. Stat. § 780-113(f). Under the Pennsylvania drug trafficking statute, the maximum sentence that may be imposed is determined by which drug is possessed. Id. The statute provides that for PWID violations where the substance is cocaine, the maximum sentence is ten years imprisonment. 35 Pa. Cons. Stat. § 780-113(f)(1.1). As such, a conviction for PWID where the substance is cocaine is a "serious drug offense" for the purposes of the ACCA.

The charging documents allow us to clearly ascertain that the Petitioner's conviction falls within the definition of a "serious drug offense." The bill of information and the criminal complaint both state that the controlled substance involved was cocaine and/or crack/cocaine. (Ex. A to Government's Amended Sentencing Memorandum, at 23, 25, Doc. No. 61). The information provided in these documents, along with the document by which the Petitioner pled guilty, establish that the Petitioner was convicted of possession with intent to deliver cocaine in 1990, which is punishable by a maximum sentence of ten years. Therefore, it is immaterial whether the Petitioner refused to admit the facts of his crime and pled guilty via an <u>Alford</u> plea. The fact of his conviction and the charging documents establish that the conduct falls within the definition of a "serious drug offense."

The Petitioner's counsel at sentencing was in possession of all of the documents and information about his 1990 conviction that the Court now relies upon. (Doc. No. 61). Counsel's performance was not deficient and there is no conceivable prejudice, because challenges to the applicability of the ACCA to the 1990 PWID conviction would have failed.

For these reasons, the Petitioner's claim that his counsel at sentencing was ineffective for failing to dispute that his burglary conviction and his 1990 PWID conviction constituted

16

predicate offenses under the ACCA fails. As these convictions were correctly considered predicate offenses, counsel's performance was not deficient and no conceivable deficiencies in performance could have prejudiced the outcome. Therefore, the Petitioner's second ground for relief under Section 2255 also fails.

## IV. EVIDENTIARY HEARING

AEDPA provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Based on the analysis above, we conclude that the Motion, files, and records in this matter conclusively show that the Petitioner is not entitled to relief on any of his claims of ineffective assistance of counsel. Accordingly, we dispose of the Motion without need for an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

This Court must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner

17

must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, we conclude that reasonable jurists could not find the resolution of Petitioners's Strickland claims for ineffective assistance of counsel debatable or wrong. Accordingly, the Court will not grant the Petitioner a certificate of appealability with respect to his ineffective assistance of counsel claims.

## **VI. CONCLUSION**

As discussed above, the Petitioner has no viable claim for ineffective assistance of counsel on any of the grounds raised. Therefore, the Petitioner's request for habeas relief is denied. An order to this effect follows.